The case for oral argument is Mohammed, Siraj-e-Mohammed v. Ashcroft. The case for oral argument is Siraj-e-Mohammed v. Ashcroft. Edward Pilot, Jr. Morning, Your Honors. My name is Edward Pilot, and I represent Petitioner Samia Mohammed. The government's brief submitted in this matter shows that the lower court did not have adequate grounds to find that petitioner lacked credibility. Rather, the government presents matters of confusion, irrelevancies, and in some cases, support for my client's credibility. As an example of confusion, I would direct you to page 10 of the government's brief, where the government challenges petitioner's belief that she would be harmed by a quote-unquote new government in Ethiopia. However, petitioner had consistently testified about the fact that the TPLF, the Tigrayan People's Liberation Front, continued to be the de facto government in her region of Ethiopia. As an example of irrelevancy, on page 9 of the government's brief, the government states that petitioner gave conflicting testimony regarding the ages of some of her five children. In essence, Your Honors, this amounts to quibbling as to whether one of those children was 14, 15, or 16 years old. And to that, I would cite you to the administrative record at pages 25, 27, and 69. I would also like the court on that point to consider that my client has not seen her children in approximately 10 years. This point doesn't relate specifically to a lack of credibility on the asylum claim, and it's not an error of a magnitude, let's say, of saying one has 10 kids when one only has five children, or one- If it were 10 when you only had 9, it might be easy to understand how you couldn't keep track. I didn't hear the first part. That's all right. Go ahead. All right. This is not a major problem that she was off by a year or two with respect to the age of one of the five children. Thank you, Your Honor. That's not a major reason for sending her back. Okay. As an example of the government's actually supporting my client's credibility, I would point the court to page 8 of the government brief, where the government states that the fact that she was seriously injured yet did not seek medical attention somehow shows she's not credible. But I would point out that if she were a liar, she could have easily named a local clinic, hospital, or doctor, and who could have disproved her? Besides the point, there could have been other reasons for her not having sought medical attention, including being scared or not having the resources to do so. And then finally, Your Honors, as a final example of the government actually supporting my client's credibility, if we look to the bottom of pages 10 and the top of page 11 of the government's brief, the government asserts that Petitioner should not have feared harm because her children resided for a period of time in the same residence without being harmed. Well, in fact, this supports my client's claim that the government in Ethiopia was looking for her because it thought, right or wrong, that she knew of the whereabouts of her husband, who was put on this most wanted list as a member of the army and a criminal. And of course, young children would not know that, especially in that environment. So in essence, there's no lack of credibility on the part of Petitioner. There's merely someone pretending that there is. I would request that the Court vacate the BIA order, and if it's in its power, grant my client asylum or alternatively remand this case so that she may obtain a new hearing on her claim for asylum. Thank you. And I'll reserve for rebuttal. Good morning, Your Honors. Patricia Smith on behalf of the Respondent John Ashcroft. The record evidence here does not compel reversal of the immigration judge's determination that Petitioner failed to present a credible claim for asylum on account of an impudent political opinion. Rather, substantial evidence supports the immigration judge's determination that Petitioner greatly embellished her answers at her merits hearing and failed to meet her burden to establish a credible claim for asylum based on an impudent political opinion. Now, let me ask you, is the issue here credibility, or is it both credibility and a separate finding of failure to establish persecution? The I.J. phrased his decision in terms of credibility. There were two major credibility issues that the I.J. discussed. This is a procedural question. Under Ventura, if we were to find that he was wrong on credibility, would we proceed to more issues, or do we simply remand for the BIA to consider the rest of the issues? If you determine that what he was deciding was credibility rather than burden of proof and you decide that he was wrong on credibility, then you would remand under Ventura. No, no. The question was, if we decide that he was wrong on credibility, then what happens? Do we simply remand or do we proceed to other issues? You would remand, Your Honor. There's not here in the I.J.'s decision what we've had in a few other cases where the I.J. says, even assuming that Petitioner is credible, I conclude that there is not a well-founded fear and so forth. There's nothing like that here. There's nothing like that here, Your Honor. Purely a credibility determination. Purely credibility, Your Honor, yes. Most significantly, Petitioner in her asylum application asserted that she came to the U.S. because she heard rumors in 1992 that the new Ethiopian government was looking for her and her husband because her husband had served in the military under the former government. However, at the merits hearing, she testified that she was actually arrested on two occasions. Didn't she check on her application the box that said, have you been arrested? There is a box which indicates, have you or any member of your family been arrested? And, yes, that box was checked. However, she included a ten-page affidavit that was detailed. And in that affidavit, she specifically stated the reason that she left was because she heard rumors and it was to avoid being detained in any way. However, her testimony was. Well, she's been detained in the past. No, she did not indicate that in her. Well, no, she didn't. But she said the reason she left when she left was because she had heard rumors they were looking for her. Correct. Now, how is that inconsistent with the fact that you have previously been arrested which you have checked off on a box? Well, she didn't specifically say that she had been. That box says, have you or any member of your family? And then the ten-page affidavit detailed everything. I mean, it appeared the boxes were almost all checked, so I don't know how much. Well, what you're trying to do is make something again out of lack of detail. Well, no, I don't think so, Your Honor. I mean, this is. Before, could you let me finish? Yes, Your Honor. I don't know whether you were here earlier in the morning. Have you listened to the other arguments? Yes, Your Honor, I was here. And, you know, I tried to summarize for the first representative of the government the skepticism that this Court has repeatedly expressed towards reliance on the application. They're badly done. That's a fact. Why are they badly done? It's because the kind of people that engage at that level of immigration practice are not very good at doing it, and they sloppily do it. So it's very poor practice to make some lack of detail in the application a test of credibility under live testimony. And I wish you would not think that was much of a case. If you want to mention it, okay. But as far as this judge goes, you are just, you know, just spinning your wheels. And that's the only thing you've got to say. It's not the only thing, Your Honor. But I would point out here it was not just a minor detail that was omitted. Here it's completely contrary to what she said at the asylum hearing, where she said she was arrested two times, detained for two weeks and three weeks. Well, no, no. As Judge Reines pointed out to you, she checked off the box. She didn't elaborate. And the box doesn't specify it's just her. It could be her or any member of her family. The detail was missing. It's not contradictory. Do you understand that? In the application You understand that. It's not contradictory. I understand you were saying that, Your Honor. I understand that. Where is the contradiction? In her asylum application, the whole idea of coming to the U.S. was simply to avoid being apprehended. And the paragraph before that, the paragraph before that. Wait a minute. How is that contradictory with the statement later that she had been arrested previously? How is it contradictory? Now, you may be, you may argue that if you had been arrested, you would have put it in the application. But it's not, you can't argue that it's contradictory. It's something in the application. You can, the test here is for you to decide whether the evidence compels reversal of the immigration judge's finding. And the immigration judge determined that her answers were greatly embellished and were greatly. Well, let me give you another problem. I have a lot of difficulty with the attitude of this immigration judge and the type of cross-examination he put this woman to because she fled the country and left her children there. He accused her of making her children slaves because they continued to live with the family she had worked for and they helped out. Although the family paid, she said, for her trip was helping to raise the children and the children were helping the family. He said, she said, how can you do that? Turn your children into slaves, make them work for these people. I mean, I thought that was one of the most offensive cross-examinations I have ever seen. I think the I.J. at that point was attempting to determine what the status was of her children, but it's not relevant to the issue of the discrepancy between. Well, he was very accusatory of her. I mean, her basis for asylum at the merits hearing was contrary to what she said in her affidavit, which was attached to her asylum. Well, is there anything else to say? Yes, Your Honor. Except what, to me, is totally inaccurate in your statement. You somehow can't catch it, but let's pass over that. Your mind-set is frozen and you can't see how it doesn't make any sense. But what else do you have as an actual contradiction? The application in question where she does check the box, they ask for details and it says, please see attached. What was attached? Her affidavit, Your Honor, and her affidavit specifically says she heard rumors in 1992 and she loved to avoid being apprehended. There's no mention whatsoever of her actually being detained. The turning to the second issue, the substantial evidence supports the IDA's conclusion that her testimony was not credible, because although in her claim, her claim for asylum is based on purported fear that the Ethiopian government would harm her in their efforts to locate her husband, one, she was able to obtain an exit visa to leave Ethiopia and had no problems doing that. She said that that was arranged for her by other people, the people she worked  She indicated someone else arranged for her, but it was for her and her name with her picture, and she didn't indicate there were any problems with that. Second, she remained in Ethiopia for a year unharmed after purportedly receiving threats in December 1994. Three, her five children were able to remain in Ethiopia unharmed. They, like her, should have had any access to information about her husband if the police were interested in that. And four, her other relatives and her employer, where she lived and worked and her Petitioner has not identified any evidence in the record which compels a reversal of the IJ's finding with respect to that issue or with respect to the credibility issue relating to the arrests and detentions. All the Petitioner has relied on, both in their briefing here today, are inconsequential facts relating to the date of the birth of a child, the age of one of the child, and the status of some of her children in Ethiopia. In short, as we've argued today and in our brief, the record evidence does not compel a reversal of the immigration judge's adverse credibility determination, and the Court should dismiss the Petitioner for review. Thank you. Justice Breyer. Just briefly, Your Honors, the government, on the point of the initial asylum application versus the testimony in court, I appreciate that the Court has recognized the They're usually done within a year of the immigrant's first arrival to the U.S., the person, and in this case, here, her native language is Amharic. We did get a multi-page affidavit, though. And I have to say it strikes me as peculiar that something as significant as this doesn't make it into the affidavit, no matter who's preparing it. If the Court would, I appreciate that, Your Honor. If the Court would look at the administrative record at page 54, and as recognized by the government in its brief, Petitioner claimed that she had told the person who prepared the form, but that, quote, he did not include that part. So there was an effort to credibly explain that omission, but as the other justices have pointed out, it's not an inconsistency. Unfortunately, when people get off the boat or the plane and come into this country, there's no primer or manual as to how to prepare one of these forms. And based on my experience with this client, I've come into it a lot later in the picture, but with other clients as well, they don't know that they're supposed to, quote, unquote, throw in the whole kitchen sink. And in some instances, say, in the case where a female has been raped, depending on her ethnic background or religion, she is not comfortable conveying that to anybody else or particularly. But that's not the claim here, is it? Not that she was raped. She's filling out a questionnaire that asks about her or any member of her family been mistreated or threatened. And after you have boxes to check, it says specify for each instance details. OK, answer those questions. And the answer is please see attached and attached doesn't talk anything about her being arrested. So she's not answering the question and not providing the details she's asked for. Now, I understand the limitations and how these people are forced to deal with an alien system and they're not the ones actually preparing these affidavits and so forth. But at some point, you can't disregard the fact that someone comes up with testimony at a hearing that never, about something dramatic that never appeared before, some suspicion that maybe it's being pulled together at the hearing and didn't really happen. Your Honor, unfortunately, I was not at the lower court hearing. I only came in at this level. But I will say, again, I would rely on administrative record page 54, where my client claims that she told the preparer of the form that he or she, I'm sorry, that he did not include that part. A couple more points and then I'll adjourn. Your Honor, unfortunately, and I don't know how to delicately put this, but the representation that my client received earlier on was less than ideal. She was represented by a lawyer who has subsequently resigned from the California bar with, quote, unquote, charges pending and has departed from the United States. It's clear that a better job could have been done. I don't blame the government for that, but it's just reality and something that I feel compelled to point out to this Court. And then I appreciate the Court's, this Court's recognition of the overzealousness on the part of the lower court on this slavery issue. It almost seemed as if once the Court in its mind determined that my client sold her children into slavery, even though the Court did not endeavor to obtain a foundation for that accusation, that at that point in time the Court made no attempt to elicit any favorable information on the asylum claim. So, again, I would just ask once again that the Court vacate the order and allow my client an opportunity for a new hearing on her claim for asylum. Thank you, Counsel. Thank you. The next case for argument is...
judges: Reinhardt, Noonan, Clifton